IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE J. BOZEK,<br><br>                Petitioner,<br><br>vs.<br><br>WARDEN LASHANN EPPINGER,<br><br>             Respondent. | CASE NO. 5:20-cv-207<br><br>DISTRICT JUDGE<br>JAMES S. GWIN<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Petitioner Lawrence Bozek filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Bozek is in custody at the Trumbull Correctional Institution due to a journal entry of sentence in the case *State v. Bozek*, Portage County Court of Common Pleas, Case No. 2010 CR 0295. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

### Summary of facts

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts underlying Bozek's conviction as follows:

{¶12} ….Melinda Bozek, appellant's wife, testified that on May 4, 2010, she came home from work at about 4:00 p.m. She was living in a two-story residence with appellant and their 12-year old child.

{¶13} Upon entering the house, Melinda went upstairs to change out of her work clothes and do the laundry, and appellant followed her. Appellant confronted Melinda accusing her of having an affair. This was a recurrent theme of their marriage. Appellant would accuse her of cheating on him; Melinda would deny it; appellant would not believe her; and the discussion would escalate into a heated argument. Melinda did not want to have the same argument again so she did not respond.

{¶14} Melinda put their dirty clothes in a laundry basket while appellant kept accusing her of having an affair. In order to get a reaction from Melinda, appellant threw the laundry basket down the stairs to the next landing. She went downstairs; put the clothes back in the basket; went to the laundry room; and put the laundry in the washer.

{¶15} Melinda then went in the living room, sat on the couch, and began watching television. Appellant walked in front of her, picked up the remote control, and threw it at her with such force he caused a large red bruise on her forehead.

{¶16} Appellant then walked into the kitchen and Melinda followed him. She stopped in the living room just outside the dining area in the kitchen and asked him, "what is wrong with you?" He did not answer and, instead, took out his gun, raised his arm, and shot her. Although Melinda testified she could not remember where on her body he hit her at that time, based on the circumstantial evidence discussed below, he shot her three times in the chest/abdomen area.[1] Melinda said to appellant, "I can't believe you shot me. I can't believe you shot me."

> [FN] This is supported by the fact that Melinda's other injuries are accounted for in the record. Further, the medical records show her chest and abdominal injuries were inflicted at close range, and the record shows this first shooting incident was the only time Melinda was standing just a few feet in front of appellant.

{¶17} Melinda testified she walked toward the chair in the living room near an end table on which a cell phone was placed. She was shot in the

leg and indicated this injury occurred when she fell in the living room before calling 911. She picked up the phone, dropped it, and it went behind the chair. She then went behind the chair, picked up the phone, and called 911.

{¶18} A Portage County Sheriff dispatcher testified she received Melinda's 911 call at 7:13 p.m. The state played the recording of this call for the court. Melinda's voice was extremely weak and failing and she was out of breath as she told the dispatcher that her husband shot her. Melinda asked for help. The dispatcher told Melinda to stay on the phone, but Melinda said, "I don't know if I can." Melinda said, "he shot me several times." The dispatcher asked her where appellant was, and Melinda said, "upstairs." In response to the dispatcher's questioning, Melinda said her husband shot her with a .9 mm handgun. Melinda stayed on the phone with the dispatcher for one minute and thirty seconds. During that time, there was no shooting and appellant was apparently not in the room with Melinda. The trial court found this was a break in appellant's assault on Melinda.

{¶19} During the sentencing hearing, the trial court noted: "There was a clear distinction of time, a minute and a half that [Melinda] * * * was on the 911 call. [Appellant] left. She assumed he went upstairs. If you look at the totality of the evidence, it's pretty clear that's what he did. He may have reloaded, more than likely reloaded."[2]

> [FN] This is supported by the fact that, while the gun holds a maximum of 11 bullets – ten in the clip and one in the chamber, officers found eight spent shells in the kitchen, four live rounds in the magazine, and another live round in the chamber, for a total of 13 rounds.

{¶20} Suddenly, while Melinda was still on the phone with the dispatcher, appellant returned to the living room, started shooting again, and the phone went dead. In the trial court's written guilty finding, the trial court found that, based on the injuries to Melinda's hand and the damage to the phone and battery in the phone, the phone was shot out of her hand.

{¶21} Lieutenant Gregory Johnson of the Portage County Sheriff's Office testified that, listening to the 911 recording with a special hearing device, he heard a gunshot right before the call terminated.

{¶22} Melinda decided she had to try to leave the house because appellant obviously had not "snapped out of it" and she was afraid that

3

if she stayed, he would shoot her in the head. When she started to get up, appellant shot at her and a bullet "grazed" the top of her head.

{¶23} Melinda went to the front door and walked out of the house, leaving blood on the door knob. She decided to go to her parent's house, which was next door to theirs, but still a good distance away. She said she lost a lot of blood and was very weak.

{¶24} Melinda's adult brother, Terry, met her at the back door of their parents' home. Melinda said she needed help and asked him to call 911. The state played the recording of the 911 call made by Terry seconds after he met Melinda at the door. Terry told the dispatcher that his sister is bleeding and needs help. He said his sister "crawled over here" and "just crawled up to the door." He said she is laying on her back at their door, was shot in the stomach, was having difficulty breathing, could barely talk, and was "talking delirious."

{¶25} Through all this, appellant never came over to the house and did nothing to try to help Melinda.

{¶26} Lieutenant Scott Witkosky of the Portage County Sheriff's Office responded to Melinda's parents' home and found her lying behind the residence on a concrete slab. She told him that when she left the house, appellant was yelling at her that he was going to kill himself. The emergency squad arrived; determined Melinda had been shot six times with three of the gunshots being in the chest/abdomen area; and transported her to Akron City Hospital where she was treated by the trauma unit.

{¶27} Lt. Johnson testified he responded to the scene of the shooting at about 8:00 p.m. Appellant was still inside the house and refusing to come out. Officers blocked off nearby roads in efforts to secure the area. Lt. Johnson obtained appellant's phone number and for the next four hours attempted to negotiate with him to surrender.

{¶28} During these conversations, appellant admitted he shot Melinda, but said it was an "accident." He said he had fallen, which caused the gun to discharge. He admitted he fired multiple rounds at Melinda, some of which struck her while others did not. Appellant repeatedly asked about Melinda's condition, but, according to Lt. Johnson, he appeared more worried about how her condition would affect him.

{¶29} As of midnight, Lt Johnson was unsuccessful in coaxing appellant out of the house. At that time, the Metro SWAT team took over

4

negotiations with appellant. However, they too were unsuccessful until they used tear gas, which caused appellant to finally surrender at about 4:00 a.m.

{¶30} Dr. Richard George, Chief of the Trauma Service Department at Akron City Hospital, testified they had evidence that Melinda sustained gunshot wounds between the thorax and abdomen and evidence of hemorrhage. As a result, he performed an exploratory laparotomy, which required an incision in Melinda's abdomen. He observed injuries to her liver and hemorrhage (bleeding) from several injuries to her liver. The injuries were so extensive, she lost over one-half of her blood. The doctor said that if they had not performed this procedure, she would have bled to death.

{¶31} The doctor said that Melinda sustained three gunshot wounds to her chest and the area between her abdomen and chest, and these injuries were life-threatening. She also sustained gunshot wounds to her shoulder, upper chest wall, both hands, and her thigh, and a hematoma to her forehead. These injuries were not life-threatening.

{¶32} Dr. George said that two bullets remain in her body, one in the right chest wall and another in the back of her abdomen. Another bullet hit her spine, fracturing that bone and, as it did, the bullet shattered, leaving bullet fragments in her spine.

{¶33} Sheriff's Deputies and BCI agents processed the crime scene that morning. They recovered the gun appellant used to shoot Melinda, which was a .22 caliber Ruger Mark II semi-automatic pistol. They also found opened boxes containing about 250 .22 caliber shells in an open drawer in a dresser in the upstairs master bedroom.

{¶34} BCI agents testified the handgun appellant used to shoot Melinda holds a maximum of ten rounds in the clip and one in the chamber. At the scene, the agents found eight spent casings from the gun, four live rounds in the magazine, and one live round that the SWAT team had removed from the gun.

{¶35} At the lab, the Ruger was found to be operable and all eight shells removed from the scene were found to have been fired from that pistol. Four fired bullets were also recovered from the scene that were also fired from this gun.

{¶36} The 250 unfired cartridges found in the box in the dresser drawer were the same brand and caliber as the fired cartridges and fired bullets found at the scene.

{¶37} BCI agents also found the cordless phone with a battery pack, both of which sustained bullet damage. The phone, which had blood stains on it, was struck by one bullet that went through it and the battery pack and out the other side.

*State v. Bozek*, No. 2017-P-28, 2018 WL 6448800, at *2-4 (Ohio Ct. App. Dec. 10, 2018).

### Procedural background

1. *Trial court proceedings*

In May 2010, a Portage County Grand Jury indicted Bozek on one count of attempted purposeful murder and one count of attempted felony murder with firearm specifications. Doc. 6-1, at 6-9 (Exhibit 1). Bozek, through counsel, pleaded not guilty. *Id*. at 11 (Exhibit 2). The next month, the grand jury filed a supplemental indictment and added two more counts of attempted murder with firearm specifications, two counts of felonious assault with firearm specifications, and one count of kidnapping. *Id*. at 13 (Exhibit 3).

In August 2010, Bozek signed a waiver of his right to a jury trial. Doc. 6-1, at 24 (Exhibit 4). The same day, Bozek, based on a negotiated plea agreement, signed a written guilty-plea form and pleaded guilty to 2 attempted murder counts—one attempted purposeful murder and one attempted felony murder—and the firearm specifications. *Id*. at 25 (Exhibit 5); Doc. 6-2, at 3-6 (transcript). Under the plea agreement, the state agreed to dismiss the remaining charges. The parties jointly recommended a sentence—7 years on

6

each murder count and 3 years on each gun specification, to run concurrently, for a total of 20 years in prison. Doc. 6-1, at 25; Doc. 6-2, at 5. The trial court held a hearing, accepted Bozek's plea, and sentenced him to 20 years in prison. Doc. 6-1, at 27 (Exhibit 6).

In March 2011, the trial court filed a nunc pro tunc sentencing entry detailing Bozek's sentence. Doc. 6-1, at 30 (Exhibit 7).

### 2. *First post-conviction petition*

Bozek obtained new counsel, attorney Whitney, who represented him in the subsequent state court proceedings and in his federal habeas cases.[1] In May 2011, counsel filed a notice of appearance on Bozek's behalf on the trial court docket. Doc. 6-1, at 33 (Exhibit 8). In November 2011, Bozek filed a post-conviction petition in the trial court to vacate or set aside his judgment of conviction and sentence. *Id.* at 35 (Exhibit 9). Bozek argued that trial counsel was ineffective for not explaining to him that he wasn't eligible for judicial release. *Id.*

In August 2014, Bozek's trial attorney filed a motion to withdraw as counsel, which the trial court granted. Doc. 6-1, at 80, 82 (Exhibits 10, 11). In December 2014, Bozek, through counsel, made an oral motion to withdraw the post-conviction petition and all pending motions, which the trial court granted. *Id.* (Exhibit 12).

---

[1] For the rest of this procedural history, when I refer to "counsel" I mean attorney Whitney, unless I note otherwise.

3.    *Delayed direct appeal*

In December 2011, Bozek filed a motion for leave to file a delayed direct appeal in the Ohio court of appeals. Doc. 6-1, at 84 (Exhibit 13). In March 2012, the Ohio court of appeals dismissed his motion on procedural grounds. *Id*. at 114 (Exhibit 14).

In April 2012, Bozek appealed to the Ohio Supreme Court. Doc. 6-1, at 117 (Exhibit 15). In his jurisdictional memorandum, Bozek raised this proposition of law:

> 1. The Appellate Court erred in its dismissal of Appellant's appeal without a proper consideration of the merits of Appellant's claims.

*Id*. at 120 (Exhibit 16). In July 2012, the Ohio Supreme Court denied Bozek leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Id*. at 139 (Exhibit 18).

4.    *Second post-conviction petition*

In January 2015, Bozek filed a second post-conviction petition in the trial court to vacate or set aside the judgment and sentence. Doc. 6-1, at 140 (Exhibit 19). Bozek again raised an ineffective-assistance-of-trial-counsel claim for counsel's alleged failure to adequately advise him of his right to judicial release. *Id*. at 142. Bozek also argued that under *State v. Nolan*, 25 N.E.3d 1016 (Ohio 2014), one of the counts he pleaded guilty to, attempted felony murder, was not a cognizable crime. *Id*. at 144. In February, the trial court overruled Bozek's petition. *Id*. at 201 (Exhibit 20).

Later that month, Bozek appealed to the Ohio court of appeals. Doc. 6-1, at 202 (Exhibit 21). Bozek raised the following claims:

1. The trial court erred in overruling appellant's petition to vacate his plea on its merits for reason that appellant did demonstrate an infringement of his constitutional rights as to render the court's judgment void or voidable.

2. The trial court erred when it failed to include in its order a finding of fact and a conclusion of law.

3. The trial court erred when it failed to resentence appellant for reason that the appellant plead guilty to a crime that is not cognizable.

*Id.* at 207-08 (Exhibit 22).[2]

In March 2016, the Ohio court of appeals reversed. The court agreed with Bozek that attempted felony murder is not a cognizable crime in Ohio, so it voided Bozek's conviction of that offense. Doc. 6-1, at 245-46. But the court rejected Bozek's request that the court only void Bozek's attempted felony murder conviction. *Id.* at 247. Instead, the court voided Bozek's entire guilty plea and wrote that, on remand, "the parties shall be in the same position as if no plea agreement had been entered[.]" *Id.*

Bozek filed a motion for reconsideration, which the court denied. Doc. 6-1, at 250, 257 (Exhibits 27, 29).

Bozek appealed to the Ohio Supreme Court. Doc. 6-1, at 266 (Exhibit 32). Bozek raised this proposition of law:

The appellate court erred when it remanded this case to the trial court with instruction to vacate Appellant's guilty plea in its entirety, when

---

[2]    Throughout this report and recommendation, Bozek's claims are reproduced as written and have not been edited.

> Appellant challenged on appeal only his sentence for one of the two counts in the indictment and the specification to which he had plead, all in violation of Appellant's rights as protected by the double jeopardy, presentment, and fair trial clause of Art. I, § 10, Ohio Constitution and Amend V and VI of the U.S. Constitution.

Doc. 6-1, at 269 (Exhibit 33). In August 2016, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Bozek's appeal. *Id.* at 323 (Exhibit 36).

### 5.    *Third post-conviction petition*

Meanwhile, in June 2015, Bozek filed a motion for new trial and to vacate sentence, and asked the trial court to vacate his guilty plea to the attempted felony murder count. Doc. 6-1, at 324 (Exhibit 37). The trial court overruled Bozek's petition. *Id.* at 329 (Exhibit 38). Bozek appealed, and in March 2016, the Ohio court of appeals dismissed his appeal as moot. *Id.* at 354 (Exhibit 42).

### 6.    *Remand and trial*

On remand, Bozek waived his right to a jury. Doc. 6-1, at 360 (Exhibit 43). In April 2017, after a bench trial, the trial court judge found Bozek guilty of two attempted murder counts with firearm specifications and two felonious assault counts with firearm specifications, and not guilty of kidnapping. *Id.* at 368-75 (Exhibit 46).

Bozek filed a sentencing memorandum, a motion to merge offenses, and a motion to dismiss the indictment. Doc. 6-1, at 384, 387, 391 (Exhibits 48, 49, 50). The trial court denied Bozek's motions and determined that consecutive

sentences were necessary. *Id*. at 393-94. In May 2017, the court sentenced Bozek to 5 years in prison for each attempted murder conviction and 3 years for each felonious assault conviction, to run consecutively. *Id*. at 394-95 (Exhibit 51). The court sentenced Bozek to 3 years for each firearm specification—the murder specifications were to be run consecutively and the assault specifications were to be run concurrently—for a total of 22 years in prison. *Id*. at 394-95.

### 7. Direct appeal

In June 2017, Bozek appealed to the Ohio court of appeals. Doc. 6-1, at 397 (Exhibit 52). Bozek raised these claims on direct appeal:

> 1. The trial court's sentence violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, in that the resentencing after remand, exceeded the original sentence; and the trial court failed to justify the increased sentence.

> 2. The trial court erred by failing to merge the attempted murder counts (One and Three) and the felonious assault counts (Five and Six) and the attendant firearm specifications for each count for reason that the counts are allied offenses of similar import under R.C. 2941.25; all in violation of appellant's protection afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits the imposition of multiple punishments for the same offense.

> 3. The trial court erred in finding that a separate animus and a separate mens rea existed when appellant stopped shooting and left the dining room during the 911 call resulting in the violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution and said finding was against the weight of evidence.

> 4. The trial court erred when it failed to grant appellant's motion to dismiss; which motion alleged that appellant's rights to presentment and fair trial as guaranteed by Article I, Section 10 of the Ohio

Constitution and Amend. V and VI of the United States Constitution were violated when it reinstated counts upon remand which were not previously subject to appeal.

5. The trial court erred by imposing consecutive sentences on the counts of conviction and the attendant firearm specifications for reason that consecutive sentences were not justified by R.C. 2929.14(C)(4); all in violation of appellant's right to due process and the protection of the Double Jeopardy Clause of the U.S. Constitution.

Doc. 6-1, at 405-407 (Exhibit 53). The Ohio court of appeals affirmed Bozek's convictions and sentences. *Id*. at 476 (Exhibit 55).

In January 2019, Bozek appealed to the Ohio Supreme Court. Doc. 6-1, at 496 (Exhibit 56). Bozek raised the first 4 issues that he raised in the court of appeals. *Id*. at 499-500 (Exhibit 57). In April 2019, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Bozek's appeal. *Id*. at 550 (Exhibit 59).

    *8.    Federal habeas proceedings*

*First petition*:        In August 2011, Bozek filed a federal habeas petition under 28 U.S.C. § 2254. Case No. 5:11-cv-1687; Doc. 6-1, at 551 (Exhibit 60). Bozek raised this ground for relief:

**Ground One**: A. Petitioner's plea was not entered knowingly and intelligently when he entered a plea to two felonies and gun specification, thinking that he was eligible for judicial release at 10 years; B. Petitioner's defense counsel was ineffective by failing to properly advise Petitioner regarding his right to Judicial release.

*Supporting Facts*: Petitioner was advised by his attorney prior to his plea that he was eligible for judicial release after 10 years. He later learned that he was not eligible for judicial release. Had he known he was not eligible for judicial release he would not have plead.

12

Doc. 6-1, at 555 (Exhibit 60). The respondent filed a motion to dismiss because Bozek failed to exhaust his claim. *Id*. at 566 (Exhibit 61). The parties agreed to a Stipulation of Dismissal without prejudice, which the Court approved. *Id*. at 577, 579 (Exhibits 62, 63).

*Second petition*:     In January 2020, Bozek, through counsel, filed this federal habeas petition under § 2254. Doc. 1. Bozek raised the following grounds for relief:

> **Ground 1**:  The trial court erred by failing to merge the attempted murder counts (one and three) and the felonious assault counts (five and six) and the attendant firearm specification for each count for reason that the counts are allied offenses of similar import under R.C. 2941.25; all in violation of appellant's protection afforded by the double jeopardy clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits the imposition of multiple punishments for the same offense.
>
> *Supporting facts*: Contrary to the facts adduced at trial and state law the state courts failed to merge the Attempted Murder and Felonious Assaults and the attendant Gun Specifications.
>
> **Ground 2**:  The trial court erred in finding that a separate animus and a separate mens rea existed when appellant stopped shooting and left the dining room during the 911 call resulting in the violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution and said finding was against the weight of evidence.
>
> *Supporting facts*: The state courts erred contrary to law by finding that a separate animus an mens re existed and thus sentenced Petitioner for two separate acts contrary to the double jeopardy clause of the United States Constitution.

Doc. 1, at 6, 8; Doc. 1-1, at 32, 37. Respondent LaShann Eppinger filed a Return of Writ, Doc. 6, Bozek filed a Traverse, Doc. 9, and Eppinger filed a Reply, Doc. 10.

13

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

    *1.   Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher*

14

*v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

### 2. *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent

state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental

miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

    3.    *Merits Review*

    To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

    Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent

or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

18

**Discussion**

In Ground 1, Bozek argues that the trial court violated the Double Jeopardy Clause when it failed to merge the 2 attempted murder counts, the 2 felonious assault counts, and the firearm specifications. Doc. 1-4, at 11. In Ground 2, Bozek argues that the trial court violated the Double Jeopardy Clause when it found that Bozek's actions were divided into 2 parts—before the 911 call and after—and when it found that Bozek had a separate animus and mens rea for his acts during those 2 parts. *Id.* at 37. The Ohio court of appeals considered these arguments together, and I do, too.[3]

The Ohio court of appeals wrote:

{¶59} As appellant's second and third assigned errors are related, they are considered together. They allege:

{¶60} "[2.] The trial court erred by failing to merge the attempted murder counts (One and Three) and the felonious assault counts (Five and Six) and the attendant firearm specifications for each count for reason that (sic.) the counts are allied offenses of similar import under R.C. 2941.25; all in violation of appellant's protection afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits (sic.) the imposition of multiple punishments for the same offense.

{¶61} "[3.] The trial court erred in finding that a separate animus and a separate mens rea existed when appellant stopped shooting and left the dining room during the 911 call resulting in the violation of the Double Jeopardy Clause of the Fifth Amendment to the United States

---

[3]     Bozek endorses this combined approach in his Petition. Doc. 1-4, at 15 (explaining that his 2 grounds for relief are "allied arguments" and that he relies on his Ground 2 arguments to support his Ground 1 argument).

Constitution and Section 10, Article I of the Ohio Constitution and said finding was against the weight of evidence."

{¶62} Appellant argues the trial court erred in finding his conduct consisted of two parts separated by the 911 call and in not merging the two attempted murder counts into the two felonious assault counts and in not merging the specifications.

{¶63} R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 11. R.C. 2941.25 provides:

> {¶64} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.

> {¶65} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶66} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court held:

> {¶67} A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed

separately, [or] (3) the offenses were committed with a separate animus or motivation. *Ruff, supra*, at ¶ 25.

{¶68} We review the trial court's merger ruling de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28.

{¶69} The facts in this case are similar to those presented in *State v. Gates*, 5th Dist. Fairfield No. 14-CA-60, 2015-Ohio-4950. The victim in *Gates* testified that after the defendant shot her, she begged him not to shoot her again. He then aimed the rifle, pulled the trigger, and shot her a second time. The trial court found that the two felonious assault offenses would not merge because there were two shots separated in time under circumstances in which different parts of the victim's body were impacted. Thus, the trial court found there was separation in time, action, and intent. The Fifth District affirmed, stating, "Based on the testimony of Mrs. Gates, the shots were two separate actions, separated by time. This is not a case where a shooter fired multiple shots in close succession from an automatic weapon." *Id*. at ¶ 35. The appellate court also held that each offense caused separate, identifiable harm. *Id*. at ¶ 36. The court noted, "Brenda Gates lost her left leg to amputation as a result of the first shot. Her right leg was saved, but she had multiple surgeries to save her right leg * * *." *Id*.

{¶70} As the Ohio Supreme Court held in *Ruff, supra*, if any one of the three factors identified in that case is true, the offenses will not merge. The first factor is that "the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm."

{¶71} Here, each of appellant's offenses inflicted separate, identifiable harm, as discussed in *Ruff, supra*. The state identified each of these separate acts in the Bill of Particulars. Based on Melinda's testimony, the photographs of her injuries, and the medical records, she sustained three gunshot wounds to the chest and abdomen (attempted murder). She also sustained a gunshot wound to her leg (felonious assault). In addition, as the trial court found, the cell phone was shot out of her hand, causing her to sustain hand injuries (felonious assault). And, when she decided to try to leave, she stood up and a bullet grazed the top of her head (attempted murder). As a result, pursuant to *Ruff*, the trial court did not err in not merging these offenses.

{¶72} Next, appellant argues the trial court erred in not merging the firearm specifications because, in his view, all of them were allied and should have been merged. "[T]his matter turns upon the correct

21

application of a statute providing that multiple prison terms for certain firearm specifications can be served consecutively." *State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019, ¶ 16. This is an issue of law, which we review de novo. *Id*. Further, if that statute applies, it is unnecessary to conduct a merger analysis. *Id*.

{¶73} Here, appellant was found guilty of four firearm specifications. R.C. 2929.14(B)(1)(b) provides: "If a court imposes a prison term on an offender under division (B)(1)(a) of this section [providing sentences for firearm specifications], * * * [e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." As noted within that provision, however, R.C. 2929.14(B)(1)(g) provides for an exception, as follows:

> {¶74} If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * attempted murder * * * [or] felonious assault, * * * and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶75} "Under this provision, the sentencing court must impose a prison term for two specifications, * * * but may also choose to impose a term for remaining specifications." *Fortune* at ¶ 18. "As stated in (B)(1)(b), the same act or transaction requirement does not apply under such circumstances." *Fortune*, *supra*.

{¶76} "Based on this exception, courts have held that a sentence is permissible on more than two specifications, without considering whether the conduct was part of the same act or transaction." *Fortune* at ¶ 19.

{¶77} Here, appellant was found guilty of four firearm specifications for his attempted murder and felonious assault convictions, pursuant to R.C., 2929.14(B)(1)(g), which required the court to sentence him on at least two of the specifications. Since the two most serious of these felonies were the attempted murder convictions, the trial court was required to impose a three-year prison term for the specifications to the

two counts of attempted murder and had the discretion to also impose three-year terms for the specifications to the two felonious-assault counts.

{¶78} In imposing a three-year term on each specification, the trial court complied with R.C. 2929.14(B)(1)(g) and, thus, did not err in not merging them.

{¶ 79} Appellant's second and third assignments of error are overruled.

*Bozek*, 2018 WL 6448800, at *6-9.

### 1. The Ohio court of appeals' factual determination was not unreasonable

Bozek argues that the Ohio court of appeals' factual determination was unreasonable. To prove this, Bozek must show, by clear and convincing evidence, that the Ohio court of appeals' decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. §§ 2254(d)(2), (e)(1)).

Bozek submits that the state court "based its findings of a distinct and separate animus and mens rea on the fact that [Bozek] briefly stopped shooting and left the dining room in order to permit the victim to make a 911 call and then returned and began firing again." Doc. 9, at 2. But the Ohio court of appeals did not make a "separate animus" finding—the third factor in *Ruff*. Rather, the court found that Bozek's actions "caused separate, identifiable harm," the first *Ruff* factor. *Bozek*, 2018 WL 6448800, at *7-8. So the Ohio court of appeals' decision was not "based on" facts relevant to a *separate animus* finding and Bozek's § 2254(d)(2) argument falls at the first hurdle. *See Rice v.*

23

*White*, 660 F.3d 242, 250 (6th Cir. 2011) ("With regard to [§ 2254(d)(2)], it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (a federal court reviews the last reasoned state court decision addressing the merits of a claim).

Even if the Ohio court of appeals' determination was *based on* Bozek leaving the room during the 911 call, Bozek's factual challenge still fails. Bozek complains that the Ohio court of appeals "interpret[ed] the 911 call" when it wrote that Melinda told the 911 dispatcher that Bozek was "upstairs" during the call. Doc. 9, at 2, 6.[4] But Melinda *did* tell the 911 dispatcher that Bozek was upstairs. *See* CD: 911 call, 1:06-1:09 (on file in the Clerk's Office) (dispatcher asking Melinda where her husband is and Melinda replying, "upstairs").[5] So the Ohio court of appeals did not have to *interpret* the 911 call;

---

[4] Bozek asserts that Melinda testified at trial that she didn't know whether Bozek went upstairs. Doc. 9, at 6 (citing the Transcript at 76). But in that portion of the transcript, Melinda was talking about whether Bozek went upstairs before he first shot her, not when she made the 911 call. Doc. 6-2, at 122.

[5] The Court granted Bozek's request to supplement the record to include a CD containing a recording of Melinda's 911 call and a diagram of the house. Docs. 10, 13; *Order*, 8/12/2020. The 911 call was played at trial and both items were admitted into evidence. Doc. 6-2, at 130-31, 162, 287, 304-05.

the call—which lasted for 90 seconds, during which time no gunshots can be heard—speaks for itself.[6]

Bozek's attempt to create a discrepancy in the evidence presented at trial about how many rounds were found in the gun and whether Bozek reloaded it, Doc. 9, at 3–4, fails for the same reason his argument above fails—the Ohio court of appeals' decision was not *based on* Bozek reloading the gun. *Rice*, 660 F.3d at 250. In any event, Bozek has not shown there was a discrepancy. Bozek argues that Detective Acklin admitted at trial that his initial report indicated there was only 1 round in the gun, not 4. Doc. 9, at 4. But Acklin explained that he wrote his initial report after merely observing the top, visible round in the magazine before a separate law enforcement official "started emptying out the" magazine. Doc. 6-2, at 174–75. So Acklin had not examined the magazine. *Id*. Once investigators examined the magazine, however, they found 4 rounds in it. *Id*. at 178; *see also id*. at 234 (testimony of Agent Carlin from the Ohio Bureau of Criminal Investigation). Acklin also testified that he found 8 spent shell casings, *id*. at 176-77, and Bozek concedes that Agent Carlin testified that he found 8 spent shell casings and 4 rounds in the gun, Doc. 9, at 5. Those accounts are consistent and show that there were 8 shots fired and 4 rounds remaining in the gun, for a total of

---

[6]     Lieutenant Johnson testified that he listened to the 911 call with a pair of amplified earphones and heard a gunshot right before the call ended. Doc. 6-2, at 153-54.

12 rounds.[7] Bozek's gun held 11 rounds. Doc. 6-2, at 167-68. So the evidence supports a finding that Bozek reloaded his gun.

Bozek argues that there is no evidence to support the Ohio court of appeals' finding that "the medical records show [Melinda's] chest and abdominal injuries were inflicted at close range" and that "this first shooting incident was the only time Melinda was standing just a few feet in front of appellant." Doc. 9, at 3. But Bozek concedes that "this whole event took place in a confined space" and doesn't dispute that Melinda stood facing Bozek when she confronted him and he responded by firing shots into her chest.

Finally, Bozek submits that there was no evidence at trial showing that his marksmanship was good enough to shoot the phone out of Melinda's hand. Doc. 1-4, at 14. The point of this argument is less than clear. The Ohio court of appeals did not find that Bozek relied on his marksmanship when he fired 11 rounds at Melinda and struck her hand. Instead, it found that "based on the injuries to Melinda's hand and the damage to the phone and battery in the phone, the phone was shot out of her hand." Given the circumstances—Bozek fired 11 rounds at close range and Melinda's hands were injured and the phone was shot through—it is impossible to conclude that the Ohio court of appeals' factual determination was unreasonable. Bozek plainly fired shots at Melinda, some of which struck her.

---

[7]     Law enforcement officials also found a live round on the kitchen table next to the gun. Doc. 6-2, at 169, 234.

Bozek persists, however, contending that it was just a "random" shot. Doc. 1-4, at 14. He asserts that he "fired the weapon approximately eight times when [Melinda] was within a few feet of him and missed her at least four times." *Id*. And the evidence shows that Bozek shot Melinda 3 times in the chest and once in the leg when she was walking and that when she stood up after the 911 call, he fired a shot that grazed her head. Doc. 6-2, at 83-92. Bozek also shot Melinda in the shoulder. *Id*. at 190. Melinda's hands had gunshot wounds and Bozek fired a shot through the telephone she was using. *Id*. at 191, 196, 235-37. The fact that Bozek's shots struck Melinda was hardly random.

Bozek has not shown, by clear and convincing evidence, that the Ohio court of appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. *Burt*, 571 U.S. at 18.

### 2. *The Ohio court of appeals' legal determination was not unreasonable*

Bozek argues that the trial court violated the Double Jeopardy Clause when it failed to merge the attempted murder counts, the felonious assault counts, and the firearm specifications. Doc. 1-4, at 11. Bozek asserts that all the counts are allied offenses of similar import, and, under Ohio Rev. Code 2941.25, they should have merged. *Id*.; Doc. 9, at 7-8.

To the extent Bozek argues that the trial court violated R.C. 2941.25 when it sentenced him, his claim is not cognizable because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or

27

treaties of the United States," not issues of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

And Bozek's federal constitutional claim fails on the merits. The Double Jeopardy Clause protects against multiple punishments for the same offense. *See Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981)). So a sentencing court may not punish a defendant more than once for a single act unless that's what the legislature intended. *Id.*; *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). A federal habeas court is bound by the state court's construction of its own state's statutes, including those regarding cumulative punishments. *Volpe*, 708 F.3d at 697.

Here, the Ohio court of appeals applied the rule in *Ruff*. *Ruff* interpreted R.C. 2941.25, which reflects the Ohio General Assembly's "intent as to when multiple punishments can be imposed." 34 N.E.3d at 895; *see Bozek*, 2018 WL 6448800, at *7; *see also Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (the Ohio legislature's "intent…determines whether two offenses are the same and, if so, whether multiple punishments are nevertheless intended."). The *Ruff* court wrote,

> If any of the following is true, the offenses cannot merge [under R.C. 2941.25] and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

34 N.E.3d at 898. The Ohio court of appeals found that Bozek's offences caused separate, identifiable harm, so his offences did not merge. *Bozek*, 2018 WL

28

6448800, at *8. So the Ohio court of appeals properly applied *Ruff* and its interpretation of Ohio's cumulative punishment statute. *Volpe*, 708 F.3d at 697. Bozek complains that the Ohio court of appeals' decision "is devoid of any reference to the Federal Constitution or even to *Blockburger [v. United States*, 284 U.S. 299 (1932)]." Doc. 9, at 8. But "the federal constitution [does not] require the state courts to apply *Blockburger* to resolve the double jeopardy claim. What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment." *Jackson*, 745 F.3d at 211.

Bozek contends that his case is like *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990). Doc. 9, at 7, 9. But *Costo* does not help Bozek. *Costo* is not a United States Supreme Court case. *See Williams*, 529 U.S. at 412 (*unreasonable application* of federal law under § 2254(d)(1) refers to Supreme Court holdings). And *Costo* involved consecutive sentences on a cocaine distribution count and an attempted cocaine distribution count when the defendant distributed a small sample of cocaine to a purchaser who was to immediately return to purchase the rest of the cocaine upon the recipient's satisfaction with the sample. 904 F.2d at 347. The similarity between *Costo* and Bozek's case are not "apparent," as Bozek alleges. Doc. 9, at 9.

Bozek's additional arguments are unavailing. He advocates the use of the separate animus test from *State v. Hartman*, 754 N.E.2d 1150, 1162 (Ohio 2001), Doc. 1-4, at 15, but concedes that Ohio doesn't apply that test anymore.

29

Doc. 1-4, at 13 (describing the evolution of Ohio allied offenses law, ending with *Ruff*). Bozek disagrees with the Ohio court of appeals' application of R.C. 2929.14(B)(1), which covers consecutive sentences for firearm specifications, but concedes that the statute "carved out an exception" that applies to him and permitted the court to impose consecutive sentences. *Id.* at 15-16. He does not explain how the state court's application of that carve-out provision resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law.

Bozek's grounds for relief fail on the merits.

**Conclusion**

For the reasons set forth above, I recommend that Bozek's Petition be denied.

Dated: November 8, 2022

            */s/ James E. Grimes Jr.*
            James E. Grimes Jr.
            U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).